46 N.J. Super. 410 (1957)
134 A.2d 820
FRANK MAZZIETELLE, PLAINTIFF-APPELLANT,
v.
BELLEVILLE NUTLEY BUICK CO., A CORPORATION OF THE STATE OF NEW JERSEY AND BUICK MOTOR CO., A CORPORATION OF THE STATE OF MICHIGAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1957.
Decided September 30, 1957.
*412 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert M. Wood argued the cause for plaintiff-appellant (Mr. James L. Handford, attorney; Mr. Wood, of counsel).
Mr. J. Emmet Cassidy argued the cause for defendants-respondents (Mr. Cassidy, attorney and of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff appeals from a judgment non obstante veredicto, entered in the Essex County Court, subsequent to a jury verdict in favor of the plaintiff in the sum of $2,500.
Plaintiff instituted suit against the defendant car dealer, Belleville Nutley Buick Co., and the defendant manufacturer, Buick Motor Co., for damages to his automobile which resulted from a fire. The cause of action against the dealer was based on its failure to inspect for defects complained of by the owner, negligent repair and failure to repair. The cause of action against the manufacturer was involuntarily dismissed, from which the plaintiff does not appeal.
The facts are not in dispute. Plaintiff, on September 20, 1955, purchased a new 1955 Buick automobile from defendant, Belleville. In connection with the purchase price Mazzietelle received an "Owner's Service Policy" wherein the defendant agreed to service the car and repair defects. *413 He testified to having many troubles with the car and to having taken it back to the defendant on about 15 occasions from the date of purchase until December 23, 1955, when it was destroyed. The car was equipped with radio, heater, defroster, power steering and power brakes. The defendant admitted it had made various repairs on the car on some nine occasions up to December 14, 1955, the last date on which it had performed any work on the car. Plaintiff testified that a few days after the purchase of the car he complained to defendant "of a burnt smell in the car * * * like something was burning * * * in the area of the dashboard" when the car was in operation, and that it would smell "all the time." He also complained to the defendant that the electrical apparatus for the windows would not "go up and down" but apparently this was repaired prior to the fire. He testified that the radio did not work satisfactorily, "it would play and then go out" and was changed by the defendant three times, and that following the replacement of the third radio "it would go on and off like it was shorting * * * it just faded away"; that a new voltage regulator was installed but was not adjusted and that the battery was not charging. Plaintiff took the car to the defendant for repairs "about 15 times or more * * * and the car was there about 20 times." When the defendant last had the car for repairs on December 14, 1955, the plaintiff complained that the car seemed "it was going out of gas and it would work back and forth like it was going out of gas and slow down and pick up, and I brought it in numerous times but that was never fixed."
When the plaintiff last took the car to the defendant on December 19, 1955 he was told they were busy and to return with the car the following week. On December 23, 1955 plaintiff drove his car out of the parking area at his place of employment, parked it at the curb, returned to close the gates, and while doing so he heard "something like a little explosion and by the time (he) turned around, the car was on fire." He testified that the fire appeared to be "underneath the dashboard" and "the whole car went up." *414 There were no passengers in the car nor was he smoking, as he had just come out of the plant where smoking is not permitted. He did not believe the motor was "touched" by the fire, nor was the gasoline or fuel system involved in the fire. The testimony discloses that the bulk of the damage was to the interior of the car.
The trial judge denied defendant's dismissal motions both at the end of plaintiff's case and at the close of all the evidence, but after a jury verdict of $2,500 for the plaintiff, the verdict was set aside and judgment was entered non obstante veredicto for the defendant, on the ground that the evidence could not support a finding of negligence. The trial judge devoted much of his opinion, 44 N.J. Super. 70 (Cty. Ct. 1957), to the question of whether or not he had the power to enter a judgment non obstante veredicto. While the power of the trial judge to enter such a judgment is not questioned on this appeal, it should be noted that "to give judgment notwithstanding a verdict" has been superseded by R.R. 4:62-2, which provides that "the procedure for * * * a new trial or for any relief from a judgment or order [is] by motion * * * or * * * by an independent action." Cf. Mortgage Corp. of N.J. v. Aetna Cas. & Ins. Co., 19 N.J. 30, 41, 42 (1955); 30 Am. Jur., Judgments, § 52, p. 844; Waltzinger, New Jersey Practice, R.R. 4:62-2, and note at p. 117; Schnitzer, Civil Practice and Procedure, 11 Rutgers L. Rev. 363, 376 (1956). The relief provided by R.R. 4:62-2 does not authorize the entering of a judgment that is contrary to the jury's verdict. After the jury verdict, the court may either grant a new trial or relieve a party from the operation of a judgment. If the defendant was entitled to any relief, it was the granting of his motion for involuntary dismissal or for judgment granted before the jury received the case for its consideration. R.R. 4:42-2(b), R.R. 4:51. In Mortgage Corp. of N.J. v. Aetna Cas. & Ins. Co., supra, the trial court entered final judgment for the plaintiff, and the Supreme Court agreed on the merits with the entry of a trial judgment for the plaintiff notwithstanding a jury *415 verdict for the defendant, thus meeting the procedural objection to the action of the trial court. However, the procedural question is here immaterial in view of our disposition of the present appeal.
Plaintiff on this appeal argues a single ground for reversal: that the trial court, having denied defendant's motion for judgment, erred in setting aside the jury verdict in favor of plaintiff where the facts disclosed that he had frequently complained to defendant of defects in the electrical equipment and of a burning odor, and that the subsequent attempts by defendant to remedy these defects and its failure to repair the defects resulted in his car being damaged by fire. The issue is whether or not there were disputed factual questions for submission to the jury for its consideration. Were there sufficient proofs to present a debatable question as to whether or not the defendant had failed to inspect for defects after the plaintiff had complained to it or had made repairs in a negligent manner or failed to make repairs if there were defects to be repaired, and whether any such act or neglect by defendant was the cause of plaintiff's loss? Defendant argues that there was a complete absence of any evidence that the explosion and fire were caused by the defendant.
It is elementary that to constitute actionable negligence from which liability arises there must be proof of the disregard or violation of a duty, and proof of resulting damage. Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 315 (1954). The defendant's responsibility was to exercise that degree of care in the discharge of its duty which an ordinarily prudent person would employ under the existing circumstances. Hempstead v. Robinson, 1 N.J. 32 (1948).
The plaintiff testified, without defendant's contradiction, that on a number of occasions within the 90 days after he purchased the car he complained to the defendant of a burning odor and defective electrical equipment, particularly the radio when the motor was in operation. The defendant admitted it had supplied some new parts and had made *416 repairs to the car in and about the dashboard. Four days prior to the fire, plaintiff again complained of the burning odor and defective radio, but instead of inspecting and making repairs, the defendant told the plaintiff it was too busy and to bring the car in the following week.
The president of the defendant testified that it delivered a 90-day service warranty to the plaintiff when he purchased the car. It is clear that in the performance of any services under the warranty or service agreement defendant was under a duty in the exercise of reasonable care to replace parts and to make repairs in a safe and suitable manner, as well as to inspect the car for such defects as plaintiff complained of and which a careful inspection would have disclosed. Heckel v. Ford, 101 N.J.L. 385, 388 (E. & A. 1925); Reilly v. 180 Club, Inc., 14 N.J. Super. 420 (App. Div. 1951); O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 338, 339 (1953); Zierer v. Daniels, 40 N.J. Super. 130 (App. Div. 1956); M. Dietz & Sons, Inc., v. Miller, 43 N.J. Super. 344 (App. Div. 1957). There was no testimony by the defendant as to the extent of any inspection, if any, or of the repairs it made to the plaintiff's car.
From all of the evidence the jury could reasonably find, as it did, that the circumstances were sufficient to warrant the conclusion, as a matter of probability, that the conduct of the defendant was improper and violative of its duty to the plaintiff. It is not necessary that proof of negligence be of specific acts; the proof may be circumstantial or indirect evidence from which liability may be inferred. M. Dietz & Son, Inc. v. Miller, supra. In the absence of direct evidence, an inference of negligence may be drawn under some circumstances from what subsequently occurred. An inference may be drawn only when it logically flows from the testimony and the physical facts as by human experience they are understood.
We now consider the more serious question  the paucity of proof of what in fact caused the fire under the dashboard. Was it a faulty wire, negligent repairs, or a failure to repair when inspection would have disclosed defects; *417 was there a smoldering cigarette or did some passerby throw a lighted match into the car? With the facts as testified to, the jury was justified in inferring that the loss of plaintiff's car was caused by the wrongful act of the defendant, and in excluding the idea that it was due to a cause with which the defendant was unconnected. Suburban Electric Co. v. Nugent, 58 N.J.L. 658 (E. & A. 1896); Podolsky v. Sautter, 102 N.J.L. 598, 600 (E. & A. 1926); 22 Am. Jur., Fires, § 87, p. 653; Restatement, Torts, § 430, p. 1156, and see 1948 Supp., p. 728.
The rules with regard to the sufficiency of proof of negligence are equally applicable to proof of cause in fact. Proof that will justify a reasonable probability as distinguished from mere possibility is all that the law requires. Flexmir, Inc. v. Lindeman & Co., 4 N.J. 509, 514 (1950); Callahan v. National Lead Co., 4 N.J. 150 (1950).
Here, where all the defects complained of were electrical in nature, and the general locality of the complaints was the same as that of the source of damage, the inference of probability is reasonable. It is not so unreasonable as to require this court to say that there was no evidence which would permit the jury reasonably to infer that the destruction of plaintiff's car stemmed from defendant's failure to inspect and make repairs, or of its failure to repair.
From the proofs submitted, we are satisfied that a triable issue was presented for the jury's consideration. There was no objection to the court's charge. The jury having found the defendant guilty of negligence, the judgment on appeal is reversed and the jury verdict is reinstated and affirmed.