291 N.J. Super. 608 (1996)
677 A.2d 1182
LEVAR BOYD, A MINOR, BY HIS NATURAL PARENTS AND GUARDIANS AD LITEM, DOROTHY BOYD AND FREDERICK BOYD, AND DOROTHY BOYD AND FREDERICK BOYD, IN THEIR OWN RIGHT, PLAINTIFFS-APPELLANTS,
v.
CONRAIL, JOHN DOE PROPERTY OWNER AND JOHN DOE TRAIN OPERATOR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1996.
Decided July 2, 1996.
*609 Before Judges SHEBELL and DREIER.
*610 Robert A. Porter argued the cause for appellant (Friedman, Bafundo & Porter, attorneys; Mr. Porter, on the brief).
William B. Scatchard, Jr. argued the cause for respondent (Capehart & Scatchard, attorneys; William B. Scatchard, of counsel; Mr. Scatchard, Jr. and Alison M. Nissen, on the letter-brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiff, Levar Boyd, a minor, and his parents, Dorothy Boyd and Frederick Boyd, filed this tort action against defendant, Consolidated Rail Corporation (Conrail), alleging that Levar sustained personal injuries on defendant's property as a result of defendant's negligence, and that plaintiffs, as parents, were forced to expend large sums of money to care for their son's injuries. Conrail filed its answer denying the allegations, and asserted plaintiff failed to state a claim upon which relief could be granted because it owed no duty to the plaintiff, a trespasser.
On August 22, 1995, defendant moved for summary judgment. After argument was heard on September 29, 1995, the motion judge stated:
Well, it's an interesting motion, and I'm going to grant the motion and bring it to a head. The Court acknowledges that the plaintiff, who was about 13 years of age, was going from school to home, crossing the Pavonia yards where all freight traffic is brought in and out of South Jersey. It's a 24-hour operation with four sets of tracks.
The Court acknowledges, and has to, in a [summary judgment] motion all the evidence that's been presented that would appear to be favorable to the plaintiff: number one, that the defendant knew that kids crossed these railroad tracks and regularly. The evidence discloses that plaintiff saw a stopped train. He climbed up on the ladder of the car, and while he was descending the ladder the train moved. He fell and lost his leg.
It is undisputed that nobody knew that he was on the car, and nobody knew in connection with the operation of that particular train.
The Court is obligated to place the plaintiff into the category of a trespasser by statute. The Court, likewise, agrees that comparative negligence would apply. The question is, however, the duty owed to the plaintiff and whether there was any evidence of a breach of that duty. The Court does not find as a matter of law that *611 the operation of a railroad is a dangerous condition and that the duty is to refrain from intentional acts. This can hardly be any intentional act due to the fact that nobody knew he was there. And, the foreseeability of somebody crossing the railroad tracks might be one thing, but the foreseeability that somebody's going to climb onto the train is another.
I can't concede [sic] of the Courts of this state imposing a duty on the railroad in this fact pattern which would be so oppressive as to make the operation of this railroad yard meaningless.
There's evidence  or there's case law from other states that clearly indicate that there's no particular duty to provide a watchman. There's no particular duty to provide fencing, and there's case law in this state that would hold that there's  the railroad  a railroad is not a dangerous condition in and of itself.
I'm also satisfied that the plaintiff has failed to provide evidence, any evidence, that he can, in fact, meet all the elements of 3:39[sic] in the restatement of torts [sic]. The motion is granted.
Plaintiffs appeal seeking reversal of the grant of summary judgment. We reverse and remand.
This accident occurred in the Pavonia Freight Yard in Camden, which is owned and operated by Conrail. The yard is the hub of all freight train activity in Southern New Jersey, and operates twenty-four hours a day. The yard is in excess of a mile in length and consists of a number of tracks for shifting and storing rail cars.
The yard is located between Veterans Memorial Middle School, which plaintiff attends, and a large apartment complex, where plaintiff resides. On September 18, 1992, plaintiff was on his way home from school with a schoolmate. The boys left school at approximately 4:00 p.m. and cut through the freight yard as a short cut home.
The 13 year old plaintiff had taken the short cut twice a day for two years. Many other children and nearby residents cut through this yard, as well. Plaintiff had seen Conrail workers observe him crossing the tracks on more than one occasion, and asserted that in the past a "train cop" employed by Conrail told him and his friend that it was okay to cross the tracks at 31st Street, where an alley ended, but not in front of the office.
On the day of his accident, plaintiff and his friend crossed some tracks, however a train was blocking their way. The other boy *612 successfully climbed under or through a train car. Plaintiff climbed up a ladder of the car, crossed over a platform on the train, but as he descended the ladder on the other side, he fell. According to plaintiff, the train was stopped, but as the other boy jumped off, "it started to move and it jerked," causing plaintiff to slip, and his right leg went under the wheel, amputating it below the knee.
According to the depositions of Conrail employees, the crew was in the midst of a "shifting operation" when the accident occurred. The train consisting of a locomotive and freight cars, was pulled past a switch and stopped. The brakeman then threw the switch so that the train could back onto a classification track. After the engineer was signalled to back the train, the rear movement apparently caused the plaintiff to fall. The train's conductor had seen people crossing on the tracks on prior occasions, but did not see any "kids" on the tracks the day of the accident.
Conrail's employees asserted that they always chased pedestrians from the yard when they discovered them crossing the tracks. Nonetheless, its employees were aware of a high concentration of pedestrian traffic cutting through the yard at 31st Street, and it had been dubbed by the employees as the "31st Street Freeway." A Conrail Police Officer stated in a subsequent written report that in the last twenty years he had investigated fifteen injuries to pedestrians at 31st Street and Cleveland Avenue. Of those fifteen injuries, eight had involved minors. In the summer before plaintiff's accident, three injuries resulting in severed feet had occurred in this area.
As to the plaintiff's presence on the train the day of the accident, the locomotive engineer testified that he did not see the incident, but that to make sure the area was clear he looked back as far as he could see prior to moving the train and saw no one. He had, in the past, seen pedestrians climb through the train cars near 31st Street, and when he did, he did not move the train until he could see that they were clear. Similar deposition testimony reflecting such knowledge was given by the train brakeman, who *613 had chased people from the tracks on other occasions, the engineer of another train, and a Conrail Police Officer.
Conrail staff testified that in other regions of the country fences had been erected to deter pedestrian traffic, and had been somewhat effective. The record indicates that some warning signs were placed near the railroad tracks in question.
Plaintiff submitted an expert's report in railway safety. The portion contained in the record indicates that defendant was aware that children crossed over the rail yard and the trains every day, and that in the expert's opinion, Conrail failed to prevent minors from crossing by not going to the school and warning the children of the dangers, failing to station police officers at the location before and after school, and by failing to block the pathway the pedestrians used.
The judge found that he was "obligated to place the plaintiff into the category of a trespasser by statute," and indeed N.J.S.A. 48:12-152 states that members of the public who walk along the railroad tracks or cross at points other than a lawful crossing may not recover against the railroad company. Entitled The Railroad Immunity Act (Act) it provides that:
It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway.
Any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages from the company owning or operating the railroad. This section shall not apply to the crossing of a railroad by a person at any lawful public or private crossing.
[N.J.S.A. 48:12-152.]
The Act was adopted in 1869, when both New Jersey and the common law followed the doctrine that a plaintiff's contributory negligence was a complete and total bar to recovery against a negligent defendant. Our Supreme Court, in Renz v. Penn Central Corp., 87 N.J. 437, 449, 435 A.2d 540 (1981), was confronted with the apparent conflict between the bar of the Railroad Immunity Act and the New Jersey Comparative Negligence Act, *614 N.J.S.A. 2A:15-5.1. In light of the Legislature's endorsement of comparative negligence, the Court in Renz held that the doctrine of comparative negligence "must be infused into the railroad immunity statute." Id. at 460, 435 A.2d 540. Thus, the Court found that coming within the prohibition of the Act would constitute minimal or threshold negligence, but that such imputed negligence alone would not bar the plaintiff from recovery. Ibid. The Court did not pass upon the question of duty of care owed to a trespasser by a railroad, including the question of whether the railroad is a dangerous instrumentality owing a higher duty of care. Id. at 463, 435 A.2d 540.
Here, on the summary judgment motion, the judge correctly considered plaintiff to be a "trespasser" by virtue of N.J.S.A. 48:12-152. He then acknowledged that comparative negligence would apply. However, he found that the duty owed to the plaintiff was merely to refrain from intentional acts, because the operation of a railroad or a railroad yard was not a dangerous condition requiring a higher duty. He found, construing all of the evidence in favor of the plaintiff, that there was no evidence of a breach of that duty. The judge did not hold, as asserted by plaintiff in his appellate brief, that Conrail was immune from suit based upon N.J.S.A. 48:12-152.
The question before this court is whether the judge properly concluded that there was no evidence of a breach of a duty. Defendant argues that because plaintiff was a trespasser, and the railroad was not a "dangerous instrumentality," the duty it owed was to refrain from wilful or intentional conduct. We perceive, however, that Conrail owed plaintiff a higher duty because a reasonable jury could conclude that defendant had reason to know of the presence of children both on the tracks and on the railroad cars.
Ordinarily, a landowner's duty to a trespasser is characterized as "the duty to refrain from acts willfully injurious." Renz, supra, 87 N.J. at 461, 435 A.2d 540; and see Kaproli v. Central R.R. of New Jersey, (E. & A. 1928). However, our courts have *615 noted that the rigid application of this duty is not necessarily the law in every case.
In Egan v. Erie R. Co., 29 N.J. 243, 148 A.2d 830 (1959), our Supreme Court stated:
In recent years our courts have restricted the previous common-law policy as to the non-liability of the owner of land to trespassers. Humanitarian considerations and reasons of social policy have led to a more flexible doctrine balancing the landowner's right to the use of his land with society's interest in the protection of its youth against injury. Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 86 A.2d 777 (1952); Harris v. Mentes-Williams Co., Inc., 11 N.J. 559, 95 A.2d 388 (1953); Cloyes v. Delaware Township, 23 N.J. 324, 129 A.2d 1, 57 A.L.R.2d 1327 (1957); Wytupeck v. City of Camden, 25 N.J. 450, 136 A.2d 887 (1957); Simmel v. New Jersey Coop. Co., 28 N.J. 1, 143 A.2d 521 (1958).
[Egan, supra, 29 N.J. at 251-52, 148 A.2d 830.]
Similarly, in Renz, supra, the Court cited favorably that portion of our opinion in Eden v. Conrail, which said:
Even as to a trespasser the old common law doctrine that an owner of land owed him no duty of care except to refrain from causing injury to such person by willful or wanton conduct has been modified "so as to put the interest of the parties in better balance." Potter v. Finch & Sons, supra, 76 N.J. [499,] 504, [388 A.2d 614 (1978)]. Especially with respect to instrumentalities possessing a real potential for grievous bodily harm, the standard of duty is the protection of others against an unreasonable risk of that harm. Imre v. Riegel Paper Corp., supra, 24 N.J. [438,] 444, [132 A.2d 505 (1957)]. That principle has for years been applied to the benefit of infant trespassers in cases where the trespass has been discovered or where there was reason to anticipate it. Strang v. South Jersey Broadcasting Co., [supra.]
[Id. at 462-63, 435 A.2d 540 (emphasis added) citing Eden v. Conrail, 175 N.J. Super. 263, 279-80, 418 A.2d 278 (App.Div. 1980), aff'd 87 N.J. 467, 435 A.2d 556 (1981).]
The Restatement (Second) of Torts § 334, dealing with "Activities Highly Dangerous to Constant Trespassers on Limited Areas," states:
A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.
[Restatement (Second) of Torts § 334.]
*616 This section is meant to be used to determine whether liability exists for bodily harm caused to "persistent trespassers" upon land by an activity carried on by the landowner. Id., comment a. Before a duty arises, the defendant must have notice that "persons constantly and persistently intrude upon some particular place within the land. It is not enough that [the owner] know or have reason to know that persons persistently roam at large over his land." Restatement (Second) of Torts § 334, comment d. (emphasis added). Even though a landowner has posted warning signs, it will not be absolved of liability if, in fact, those steps are known by the owner to be ineffective. "If the steps taken by the possessor, no matter how reasonable when taken, proved to his knowledge ineffective, he is required to take into account the probable presence of trespassers within such area and to conduct his activities with reasonable regard for their safety." Id., comment e.
The illustrations accompanying § 334 find a duty on facts quite similar to this case. They provide:
1. The employees of a factory situated near the right of way of the A Railway Company are, to the knowledge of the Company, in the habit of crossing its line at a point where the entrance to the factory is opposite a public highway leading to the town where the employees live. In the dusk of a winter afternoon a locomotive of the A Company, which is driven over this point without a headlight and without ringing its bell or blowing its whistle, runs over B, a workman in the factory, who is crossing the track on his way home. A is subject to liability to B.
2. Under circumstances similar to those given in Illustration 1 except that the A Railway Company has posted notices that persons trespassing upon their track at this point will be prosecuted, C, a workman, employed in the factory, is similarly hurt. The A Railway Company is subject to liability to C.
3. The A Railway Company has knowledge of the fact that the inhabitants of the town of X have so persistently used a part of the right of way parallel to its track as a means of reaching their homes that they have worn a beaten path beside the track. This path is at a point where the tracks curve sharply, and it is so close to the tracks as to make its use dangerous while trains are passing. B, one of the inhabitants of the town of X, is walking along the path on his way home from the station. A locomotive of the A Company is driven around the curve at a high rate of speed in the same direction as that in which B is walking, without a headlight and without ringing its bell. It strikes B. The A Railway Company is subject to liability to B.
*617 Thus, § 334 has come to be known throughout the country as the "frequent trespasser exception," or as the "beaten path exception." See Mariorenzi v. Joseph DiPonte, Inc., 114 R.I. 294, 333 A.2d 127, 131 (1975).
In Imre v. Riegel Paper, supra, the Court recognized the frequent trespasser exception's viability in light of the possessor of land's knowledge of a pattern of trespassing.
The standard of duty is the protection of others against an unreasonable risk of harm; and the principle is operative in favor of trespassers on land if the presence of the particular trespasser be discovered, or the possessor of the land be aware of constant trespassing upon a particular place or a limited area and the act is likely to cause death or serious bodily harm. Strang v. South Jersey Broadcasting Co., supra.

The general rule of liability to trespassers for acts wilfully injurious given in the Restatement, section 333, is qualified by the exceptions formulated in sections 334 to 339.
[24 N.J. at 444-45, 132 A.2d 505 (emphasis added).]
In Strang, supra, the Court specifically cited, as authority, § 334 of the Restatement (Second) of Torts, when it stated that:
[T]he possessor of land is liable for the reasonably foreseeable injurious consequences of the use of a dangerous agency on the land. Where an act carelessly done would be highly dangerous to the personal safety of others, the common law raises a `public duty' of care commensurate with the risk of harm ...
The principle is generally deemed operative in favor of trespassers on land if the presence of the particular trespasser be discovered, or the possessor of the land be aware of constant trespassing upon a particular place or a limited area and the act is likely to cause death or serious bodily harm. Restatement of Torts, Sections 334, 335.
[9 N.J. at 38, 86 A.2d 777.]
In the present case, the motion judge failed to recognize the "beaten path exception" to the general rule regarding the duty of the railroad to a trespasser. See Imre, supra, 24 N.J. at 448, 132 A.2d 505 (discussing the significance of a "beaten path" on the knowledge of a possessor of land). Under § 334, the rule does not require that the activity be one involving a "dangerous instrumentality." Rather, the activity must pose a risk of death or serious *618 bodily harm to a known trespasser, in the context of the limited area in which the trespasser is known to intrude. See Restatement (Second) of Torts, § 334. The rule has most often been applied to railroads, and does not require resolution of the issue left open by our Supreme Court in Renz, supra, of whether or not a railroad is a dangerous instrumentality. Care commensurate with the risk of harm was required of the railroad. Strang, supra, 9 N.J. at 38, 86 A.2d 777.
Defendant's employees testified at deposition that this limited area of the rail yard was known as the "31st Street Freeway" due to the high concentration of pedestrian traffic. Conrail was clearly on notice that persons constantly and persistently intruded upon a particular area within the land. There was a worn path leading from the school to the railroad yard, and from the railroad yard to the housing complex on the other side. See Restatement § 334, Illustrations. Plaintiff testified that Conrail workers were aware of his trespass, and told him where to cross without getting caught. Conrail employees testified that they had chased trespassers from the area. Indeed, the engineer even testified that he had, in the past, seen people climbing upon and through the rail cars. The number and frequency of injuries to trespassers within this limited area provided defendant not only with ample knowledge of a constant trespass, but also with full knowledge of the danger confronting those trespassers.
Giving credence to all of the proofs available on the motion, Conrail had a duty to exercise reasonable care to prevent injury to trespassers, including the young plaintiff. Plaintiffs presented evidence that Conrail had not met the standard of care required for a known trespasser using a frequent path. Many "reasonable steps" could have been taken, including speaking to children at school, posting police officers during school times, erecting an *619 overpass, installing barriers or the like. Summary judgment was improperly granted.[1]
Reversed and remanded.
NOTES
[1] Our disposition of this matter is not meant to preclude the court on remand from considering the application of Section 339 or any other applicable theory, if also found appropriate.