690 A.2d 682

EDWIN OCASIO AND SEYDA MOHAMMAD, BY HER G/A/L MARIA
OCASIO, PLAINTIFFS–RESPONDENTS–CROSS–APPELLANTS,
v. AMTRAK, NEW JERSEY TRANSIT AUTHORITY BUS COM-
PANY AND DONALD REED, DEFENDANTS–APPELLANTS–
CROSS–RESPONDENTS, AND VAL WELDING CORPORATION,
DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued September 18, 1996—Decided March 27, 1997.

Before Judges LONG, SKILLMAN and RODRIGUEZ.

*Jennine DiSomma* argued the cause for defendants-appellants-cross-respondents (*Saiber, Schlesinger, Satz & Goldstein,* attorneys; *Ms. DiSomma,* of counsel and on the brief; *Robert B. Nussbaum* and *Deborah J. Fennelly,* on the brief).

*David P. Corrigan* argued the cause for plaintiffs-respondents-cross-appellants (*Giordano, Halleran & Ciesla,* attorneys; *Mr. Corrigan* and *Norman M. Hobbie,* of counsel and on the brief; *Charles A. Cerussi,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal requires us to decide whether a railroad may be held liable for failing to take easy and inexpensive measures to block access to stairways leading to an abandoned railroad station which it should anticipate will be used as a shortcut to cross its tracks. We also must decide whether a plaintiff in a personal injury action who seeks damages for loss of enjoyment of life may prevent the jury from hearing evidence that he was suffering from a long-term addiction to drugs at the time of the accident.

During the evening of November 30, 1990, plaintiff Edwin Ocasio was struck by a train while walking on elevated railroad tracks in the City of Newark. Ocasio has remained comatose since the accident.

This action was brought by Ocasio and his daughter Seyda Mohammed, through her guardian ad litem, against Amtrak, which owned and maintained the elevated tracks, NJ Transit, which operated the train that struck Ocasio, and Donald Reed, who was the train's engineer.[1] In their answer, defendants raised various defenses, including Ocasio's comparative negligence in trespassing upon the railroad tracks.

Plaintiffs' primary theory of liability against Amtrak was that it negligently failed to prevent pedestrians from gaining access to the elevated tracks by means of stairways leading to the old South Street Station, which had been closed for almost forty years. Plaintiffs presented evidence showing that one stairway provided unimpeded access to the tracks and that a second stairway on the opposite side of the tracks had only a three foot to three-and-a-half foot high railing at the top of the stairs that could be easily stepped over. Plaintiff also presented evidence that there is a third stairway with an adjoining direct pathway approximately 500

---

[1] The complaint also names as a defendant Val Welding Corporation, which is identified as the party responsible for the construction and/or maintenance of the stairways leading to the elevated railroad tracks. However, plaintiffs failed to pursue their claim against this defendant.

feet from the South Street Station, which leads to an area of tracks near the South Street Bridge. Plaintiffs' expert testified that Amtrak could have easily and inexpensively blocked the access to the railroad tracks provided by these three unused stairways. In addition, plaintiffs presented evidence that twenty-four reports were filed with Amtrak during the two-year period preceding the accident of trespassing in the area where Ocasio's accident occurred.

Plaintiffs' theory of liability against NJ Transit and Reed was that Reed failed to exercise due care in operating the train. Specifically, plaintiffs alleged that Reed failed to make proper observations of the tracks, as a result of which he failed to discover Ocasio's presence at a time when he could have sounded the train's horn and given Ocasio sufficient warning to move before the train struck him.

A jury found that Amtrak had been negligent and that its negligence had been a proximate cause of the accident. The jury also found that Ocasio had been negligent, and it apportioned 40% negligence to him. The jury further found that plaintiff suffered a total of $7,500,000 in damages—$6,000,000 for past and future medical expenses and $1,500,000 for loss of enjoyment of life. The court molded this verdict and entered judgment against Amtrak for $4,500,000 together with prejudgment interest. The jury found that Reed had not been negligent, and the court entered judgment in favor of Reed and NJ Transit. The court subsequently denied Amtrak's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.

Amtrak appeals from the jury's verdict, arguing that the trial court erred in (1) instructing the jury that Amtrak had a duty to exercise reasonable care for the safety of trespassers if it knew or had reason to know of their frequent presence; (2) failing to instruct the jury that any duty of reasonable care Amtrak might have was limited to warning trespassers of concealed dangers; (3) denying Amtrak's motion to dismiss on the ground that plaintiffs failed to show a proximate causal relationship between Amtrak's

alleged negligence and Ocasio's accident; (4) improperly allowing plaintiffs to show the jury a "Day in the Life" video of Ocasio's present condition or, alternatively, in not giving a cautionary instruction regarding this video; and (5) improperly precluding Amtrak from introducing evidence concerning Ocasio's long-term drug addiction for the jury to consider in determining the amount of damages. Plaintiffs cross-appeal, arguing that if this court concludes that a new trial is required with respect to Amtrak's liability, a new trial also should be granted with respect to Reed's and NJ Transit's liability because the jury's finding that Reed was not negligent was against the weight of the evidence.

We conclude that the trial court correctly decided that Amtrak had a duty of reasonable care under the circumstances of this case and that it properly instructed the jury regarding this duty. We also conclude that plaintiffs presented sufficient circumstantial evidence of the existence of a proximate causal relationship between Amtrak's negligence and Ocasio's accident to warrant the submission of this issue to the jury. We further conclude that the court did not err in admitting the "Day in the Life" video of Ocasio's treatment. Consequently, we affirm the liability verdict against Amtrak and the money judgment for Ocasio's past and future medical expenses. However, we conclude that the court committed reversible error by prohibiting Amtrak from presenting evidence of Ocasio's drug addiction in connection with his damages claim for loss of enjoyment of life. Accordingly, we remand for entry of a judgment for $3,600,000, representing 60% of the jury verdict for past and future medical expenses, and for a new trial limited to Ocasio's damages claim for loss of enjoyment of life. Because plaintiffs only sought a new trial against Reed and NJ Transit in the event Amtrak obtained a new trial on liability, plaintiffs' cross appeal is dismissed.

I

In *Renz v. Penn Cent. Corp.*, 87 *N.J.* 437, 435 *A.*2d 540 (1981), the Court held that the railroad immunity statute, *N.J.S.A.* 48:12–

152, does not provide a railroad with absolute immunity from a claim by a person who is struck by a train while walking or standing on the tracks. Instead, the statute constitutes a legislative determination that such conduct is "minimal or threshold negligence" which will bar recovery only if the trier of fact concludes that the plaintiff's negligence was greater than that of the railroad. *Id.* at 459–61, 435 *A.*2d 540. Although the Court did not determine the duty of care which a railroad owes to a trespasser, it noted that even though "[t]raditionally, a landowner owed no duty to a trespasser other than to refrain from acts wilfully injurious, . . ., in the evolution of the common law of trespass some accommodation of negligence principles has occurred." *Id.* at 461, 435 *A.*2d 540. The Court also noted that "there has long been an established exception to the general rules governing landowner liability ·to trespassers, whereby property owners are subject to a higher standard of care when the property owned by the landowner can be classified as a dangerous instrumentality." *Id.* at 462, 435 *A.*2d 540.

Although the Supreme Court has not considered the duty of care which a railroad owes to a trespasser since it decided *Renz,* another panel of this court recently addressed the issue. In *Boyd v. Conrail,* 291 *N.J.Super.* 608, 677 *A.*2d 1182 (App.Div.1996), in which a child was injured by a train while using a railroad yard as a shortcut from his home to school, the court held that "because a reasonable jury could conclude that [the railroad] had reason to know of the presence of children both on the tracks and on the railroad cars," it owed a higher duty of care than merely to refrain from wilful or intentionally injurious conduct. *Id.* at 614, 677 *A.*2d 1182. The court ruled that plaintiff's claim was governed by section 334 of the second Restatement of Torts, dealing with "Activities Highly Dangerous to Constant Trespassers on Limited Area," which states:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity

involving a risk of death or serious bodily harm with reasonable care for their safety.

[*Restatement (Second) of Torts* § 334 (1976).]

The court noted that the rule set forth in section 334 "has most often been applied to railroads, and does not require resolution of the issue left open by our Supreme Court in *Renz, supra,* of whether or not a railroad is a dangerous instrumentality." *Id.* at 618, 677 *A.*2d 1182. Applying section 334, the court concluded that "[c]are commensurate with the risk of harm was required," *ibid.,* and that the railroad could have satisfied this duty by "speaking to children at school, posting police officers during school times, erecting an overpass, installing barriers or the like." *Id.* at 618–19, 677 *A.*2d 1182.

The trial court in this case instructed the jury in the language of section 334 that "a possessor or owner of land upon which a railroad is operated who knows or from facts within his knowledge should know that trespassers constantly intrude upon a limited area of his property is subject to liability for bodily harm caused to them by his failure to carry on an activity involving a risk of death or seriously bodily harm with reasonable care for their safety." Therefore, we must decide whether Amtrak had a duty of reasonable care to Ocasio either under the rule set forth in section 334 or under other applicable principles of tort law, or whether, as Amtrak argues, this case is governed by the common law rule that a landowner's only duty to a trespasser is to refrain from wilfully injurious acts.[2]

Our Supreme Court has recently observed that "[t]he historical classification of the degrees of care owing to visitors upon land ... are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care

---

[2] Although Amtrak was created by federal legislation and is partially owned by the United States government, the parties have proceeded on the assumption that the case is governed solely by New Jersey law. We have no reason to question this assumption. See *Eichelberg v. National R.R. Passenger Corp.,* 57 *F.*3d 1179, 1183 n. 3 (2d Cir.1995).

against foreseeable harm to others." *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 435–36, 625 *A.*2d 1110 (1993) (quoting *Butler v. Acme Mkts., Inc.,* 89 *N.J.* 270, 277, 445 *A.*2d 1141 (1982) and citing *Renz v. Penn Cent. Corp., supra,* 87 *N.J.* at 462, 435 *A.*2d 540). The Court concluded that instead of a landowner's duty of care turning on the common law methodology of landowners' liability, the determination "[w]hether a person owes a duty of reasonable care toward another [should turn] on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Id.* at 439, 435 *A.*2d 540. "That inquiry involves identifying, weighing, and balancing several factors—*the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid.* (emphasis added). The Court also indicated that the determination whether a party owes a duty of reasonable care towards another is "very fact-specific." *Ibid.; see also Kuzmicz v. Ivy Hill Park Apartments, Inc.,* 147 *N.J.* 510, 515–16, 688 *A.*2d 1018 (1997).

The Court recently applied these principles in a case involving adult trespassers. In *Brett v. Great Am. Recreation, Inc.,* 144 *N.J.* 479, 677 *A.*2d 705 (1996), five young adults were seriously injured on a ski slope while tobogganing at night after the ski facility had closed. The essential issue presented by the appeal was whether the Ski Statute, *N.J.S.A.* 5:13–1 to –11, governs claims by trespassers injured while engaged in an activity other than skiing. Although the Court held that the Ski Statute does not govern such a claim, *id.* at 494–503, 677 *A.*2d 705, it nevertheless upheld a jury verdict in plaintiffs' favor. The Court concluded that the ski facility was barred by the doctrine of "invited error" from contesting the applicability of the Ski Statute, because it had conceded at trial that the case should be submitted to the jury under this statute. *Id.* at 503–08, 677 *A.*2d 705. The Court further concluded that an affirmance of the verdict under the doctrine of invited error would not result in a fundamental miscarriage of justice because "the verdict would have been the same" if

the case had been submitted to the jury under the common law rather than the Ski Statute. *Id.* at 508, 677 *A.*2d 705. The Court specifically rejected the ski facility's argument that under the common law "plaintiffs, as trespassers, were owed no more than a duty to refrain from wilfully injuring them." *Ibid.* The Court stated that "[l]andowners owe a higher duty even to trespassers when their presence is foreseeable, . . . particularly if an artificial condition or 'dangerous instrumentality' on the land poses a danger to them." *Id.* at 509, 677 *A.*2d 705. The Court saw no need "[to] struggle to place plaintiffs within one or another of the common law classifications, . . . [or to] determine whether the technical elements of the dangerous instrumentality rule are satisfied." *Ibid.* Rather, quoting *Hopkins v. Fox & Lazo Realtors, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110, the Court indicated that "[t]he issue is whether 'in light of the actual relationship between the parties under all of the surrounding circumstances,' the imposition of a duty upon the landowner is 'fair and just.' " The Court concluded based on all of the circumstances, including the foreseeability that trespassers would use the ski slope for tobogganing, that "the duty defendant owed to plaintiffs under the common law would, at a minimum, have encompassed a duty to remove obvious, man-made hazards as soon as practicable." *Ibid.*

■ Therefore, we conclude that even though the rules of landowners' liability predicated on the common law classifications of trespasser, licensee and invitee described in the second Restatement of Torts may provide guidance in determining whether a duty of reasonable care should be imposed in particular circumstances, *cf. Vega v. Piedilato,* 294 *N.J.Super.* 486, 501, 683 *A.*2d 845 (App.Div.1996); *Boyd v. Conrail, supra,* this determination should ultimately turn on the factors identified in *Hopkins* and applied in *Brett,* that is, the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care,

and the public interest in the proposed solution.[3] *Hopkins v. Fox
& Lazo Realtors, Inc., supra,* 132 *N.J.* at 439, 625 *A.*2d 1110; *see
also Mulraney v. Auletto's Catering,* 293 *N.J.Super.* 315, 320–21,
680 *A.*2d 793 (App.Div.), *certif. denied,* 147 *N.J.* 263, 686 *A.*2d 764
(1996).

■ Although Ocasio was a trespasser on Amtrak's property,
we believe that, as in *Brett,* the other factors identified in *Hopkins*
point toward the recognition of a duty of reasonable care under all
the surrounding circumstances. Plaintiffs presented uncontro-
verted evidence that Amtrak's elevated railroad tracks create an
artificial barrier to pedestrians desiring to walk from one side of
its tracks to the other and that the only underpasses or overpasses
in close proximity to the South Street Station are inconvenient for
pedestrians to traverse. Thus, a trier of fact could find that
Amtrak should reasonably have foreseen that some persons would
use the stairways to the station as a shortcut to cross the tracks.
Moreover, Amtrak had received twenty-four incident reports in
the two year period preceding Ocasio's accident indicating that
persons were trespassing in the area and that train operators had
been forced to resort to emergency measures on some occasions to
avoid hitting them. In addition, even though Ocasio is an adult,
the stairways provided children with easy access to the tracks; in
fact, seven of the incident reports indicated that children had been
observed on the tracks. Consequently, the stairways created a
substantial "attendant risk" that a person crossing the tracks
would be struck by a train and suffer serious injury or death.

---

[3] Since we conclude that the question whether Amtrak owed a duty of
reasonable care with respect to the stairways leading to the old South Street
Station should be determined by the factors set forth in *Hopkins* rather than
under section 334 of the second Restatement of Torts, it is unnecessary to decide
whether, under the analytical scheme of the restatement, plaintiffs' claim against
Amtrak rests upon the "activity" of maintaining a railroad right of way upon
which trains are operated, which would implicate section 334, or whether it
rests upon an alleged dangerous "artificial condition on the land," which would
be governed by section 335.

*Hopkins v. Fox & Lazo Realtors, Inc., supra*, 132 *N.J.* at 439, 625 *A.*2d 1110.

Moreover, plaintiffs presented evidence that the South Street Station had been closed for almost forty years prior to the accident and that Amtrak could have easily and inexpensively made structural alterations to the stairways which would have blocked access to the tracks. Amtrak did not controvert this evidence or present any evidence that it intends to reopen the station or that there is any other reason for its failure to take the kind of simple remedial measures suggested by plaintiffs' expert. Therefore, a trier of fact could reasonably find that Amtrak had the "opportunity and ability" to block the access to its tracks provided by the stairways and that the "public interest" would be served by the railroad taking such measures. *Ibid.*

We emphasize, as the Court counselled in *Hopkins,* that the duty of care recognized in this case is "very fact-specific." 132 *N.J.* at 439, 625 *A.*2d 1110. We do not impose a general duty on railroads to prevent access to all the tracks on the many routes through which trains pass in our State. *Cf. Egan v. Erie R.R. Co.,* 29 *N.J.* 243, 253, 148 *A.*2d 830 (1959) (noting "the practical impossibility of adequately fencing or guarding [all railroad rights of way] against trespassers"). Rather, this duty is limited to taking easy and inexpensive measures to block access to the stairways leading to a station which no longer serves any useful purpose in the operation of the railroad.

II

Amtrak argues that even if it had a duty of reasonable care, this duty was limited to warning trespassers of concealed dangers, and that the trial court erred in failing to so instruct the jury. Amtrak relies upon cases which state that "the trespasser's awareness of the peril is an absolute bar to recovery." *Imre v. Riegel Paper Corp.,* 24 *N.J.* 438, 445, 132 *A.*2d 505 (1957). However, for the reasons already discussed at length in section I of this opinion, we conclude that this case should be governed by the "general tort obligation to exercise reasonable care against foreseeable harm to

others," *Hopkins v. Fox & Lazo Realtors, supra,* 132 *N.J.* at 435, 625 *A.*2d 1110, rather than by a mechanical application of common law principles of landowners' liability. Plaintiffs' essential negligence claim against Amtrak was not that it failed to provide adequate warnings of the dangers posed by its tracks but rather that it failed to take readily available and inexpensive measures to block access to the tracks in the area of Ocasio's accident. Under the circumstances of this case, we are satisfied that Amtrak's duty of reasonable care extended to undertaking such safety measures. See *Restatement (Second) of Torts* § 334 cmt. e (1976) ("[I]t is not enough that the possessor has posted notices to the effect that 'trespass is not permitted' or that 'trespassers will be prosecuted,' if he knows or has reason to know that such notices are disregarded either as a matter of general custom or at the particular place."); *Boyd v. Conrail, supra,* 291 *N.J.Super.* at 616, 677 *A.*2d 1182 ("Even though a landowner has posted warning signs, it will not be absolved of liability if, in fact, those steps are known by the owner to be ineffective."); *see generally* 5 Harper, James & Gray, *The Law of Torts* § 27.7 at 200–02 (1986); *Prosser on Torts* § 58 at 395–96 (5th ed.1984). Therefore, the trial court properly instructed the jury that a party which engages in an activity involving a foreseeable risk of death or serious bodily injury has a general duty to exercise reasonable care rather than simply to warn of concealed dangers.[4]

## III

██ Amtrak argues that the trial court should have granted its motion for a dismissal or judgment notwithstanding the verdict

---

[4] In fact, by instructing the jury in accordance with section 334 of the Restatement that Amtrak's duty of reasonable care would arise only if "Amtrak knew or from facts within its knowledge should have known that trespassers intrude upon a limited area of their property," rather than predicating a duty of care simply upon the reasonable foreseeability of the presence of trespassers, *cf. Brett v. Great American Recreation, Inc., supra,* 144 *N.J.* at 508–10, 677 *A.*2d 705, the court actually gave Amtrak the benefit of a more favorable instruction than it was entitled to receive.

because plaintiffs did not present sufficient evidence that Ocasio gained access to the tracks by means of any of the stairways in the area of the South Street Station and thus failed to show a proximate causal relationship between Amtrak's alleged negligence and the accident.

A plaintiff in a negligence action must establish not only defendant's negligence but also that that negligence was a proximate cause of the accident. *Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc.*, 53 *N.J.* 157, 161, 249 *A.*2d 382 (1969). To establish proximate cause, a plaintiff must first show that the defendant's negligence was a "cause in fact" of the accident. *Kulas v. Public Service Elec. & Gas Co.*, 41 *N.J.* 311, 317, 196 *A.*2d 769 (1964). However, "[t]he proof required to establish a proximate cause does not need to be absolute but only 'one of probability or likelihood.' " *Parks v. Pep Boys*, 282 *N.J.Super.* 1, 9, 659 *A.*2d 471 (App.Div.1995) (quoting *Braitman v. Overlook Terrace Corp.*, 132 *N.J.Super.* 51, 56, 332 *A.*2d 212 (App.Div.1974), *aff'd*, 68 *N.J.* 368, 346 *A.*2d 76 (1975)). "Proof that will justify a reasonable probability as distinguished from mere possibility is all that the law requires." *Mazzietelle v. Belleville Nutley Buick Co.*, 46 *N.J.Super.* 410, 417, 134 *A.*2d 820 (App.Div.1957). Furthermore, such proof "can be established by circumstantial evidence." *Bergquist v. Penterman*, 46 *N.J.Super.* 74, 89, 134 *A.*2d 20 (App. Div.), *certif. denied*, 25 *N.J.* 55, 134 *A.*2d 832 (1957).

Plaintiffs were unable to present direct evidence of the route Ocasio used to obtain access to the tracks, because he was alone on the night of the accident and is now comatose. However, plaintiffs presented evidence that Ocasio lived on one side of the tracks in the general vicinity of the station, that he had friends and relatives who lived on the other side of the tracks, and that he generally walked when he visited those friends and relatives. Although the precise location of the accident is unclear, plaintiffs presented evidence from which the jury could have found that Ocasio was only 100 feet from the top of one of the stairways leading to the station when the accident occurred. Plaintiffs also

presented evidence that the nearest other means of access to the tracks, located at Penn Station and in the area of Hunter Tower, were approximately a mile from the site of the accident. Therefore, plaintiffs presented adequate circumstantial evidence from which the jury reasonably could have inferred that Ocasio gained access to the tracks by climbing one of the stairways to the abandoned South Street Station.

## IV

■ Amtrak argues that the trial court erred in permitting plaintiffs to show a "Day in the Life" video of Ocasio because the prejudicial effect of the video outweighed whatever probative value it may have had. In the alternative, Amtrak argues that even if this video was properly admitted, the court erred in failing to give the jury a cautionary instruction that the video was not being shown to support a claim for pain and suffering because the medical evidence indicated that Ocasio was in a chronic vegetative state, without any awareness of his surroundings.

In *Schiavo v. Owens–Corning Fiberglas Corp.*, 282 *N.J.Super.* 362, 368–69, 660 *A.*2d 515 (App.Div.1995), we held that a properly authenticated videotape of a "Day in the Life" of an accident victim may be admitted into evidence to aid the jury in understanding the nature and extent of the plaintiff's injuries. We also rejected an argument that the videotape in that case should have been excluded because it "was cumulative evidence that had no purpose but to inflame the jury and that it should have been excluded under *Evid. R.* 4 (N.J.R.E.403)." *Id.* at 368, 660 *A.*2d 515.

Similarly, we conclude that the videotape of a "Day in the Life" of Ocasio was probative of his damages claims, and that the trial court did not abuse its discretion in concluding that the probative value of this evidence was not substantially outweighed by the risk of undue prejudice, confusion of issues or misleading the jury. *N.J.R.E.* 403(a). The videotape was properly admitted to assist the jury in resolving the strongly contested issue of whether

Ocasio requires care at a long-term care facility, such as the brain trauma unit of the nursing home where he was residing at the time of trial, which charged $645 per day, or could be adequately cared for at a long-term skilled nursing home, which costs less than $200 per day. Although the parties' medical experts both testified concerning their observations of Ocasio's current condition and the kind of care he requires, the videotape was the only means the jury itself had to observe Ocasio's present condition and the medical care being provided for him.

Because we conclude for the reasons set forth in section V of this opinion that the damages verdict for loss of enjoyment of life, which was the only damages award for nonpecuniary loss, must be reversed, we have no need to consider Amtrak's alternative argument that the trial court erred in failing to instruct the jury that the videotape could not be considered as a basis for an award for pain and suffering. Although we do not anticipate that the "Day in the Life" video will be admitted at the retrial of Ocasio's claim for loss of enjoyment of life damages, we do not foreclose the trial court from considering a request for a special instruction that the jury may not award damages for pain and suffering.

## V

Plaintiffs made a motion *in limine* to bar defendants from introducing any evidence of Ocasio's drug history. Defendants indicated in response that they were prepared to present evidence that Ocasio had a ten year history of drug abuse problems involving cocaine, heroin and alcohol which had continued until the accident. Defendants also indicated that they were prepared to present evidence that Ocasio had gone through two long-term methadone treatment programs during the two years preceding the accident. Defendants argued that "the jury, in making determinations as to the quality ... of the life and the loss of enjoyment of the life, should be entitled to see what this person's

life was like before this incident so they can weigh it." [5] The trial court granted plaintiffs' motion to exclude this evidence, stating that its prejudicial effect would outweigh its probative value with respect to Ocasio's claim for loss of enjoyment of life.

During the trial, Ocasio's twelve year old daughter testified that her father, who was separated from her mother, regularly visited with her, that he would take her to the park, and that he enjoyed spending time with her. Ocasio's sister testified that she and the other members of the family all had very close relationships with him. She also testified that Ocasio enjoyed raising pigeons and that "[h]e was always in a happy mood." She went on to characterize her brother as "talkative," "energetic," "friendly" and "very happy." However, the trial court's ruling on plaintiffs' *in limine* motion foreclosed defendants from cross-examining these witnesses with respect to Ocasio's history of drug addiction and the impact of that addiction upon his life. Based on the testimony of Ocasio's daughter and sister, plaintiffs' attorney argued in summation that Ocasio "liked to laugh, talk, walk," that his "family loved him," and that the accident had forever deprived him of the opportunity to "look into his daughter's eyes, go over a report card, go to a first dance, talk to her." The jury subsequently awarded Ocasio $1.5 million for loss of enjoyment of life.

 "Fair compensatory damages resulting from the tortious infliction of injury encompasses no more than the amount that will make the plaintiff whole, that is, the actual loss." *Caldwell v. Haynes,* 136 *N.J.* 422, 433, 643 *A.*2d 564 (1994). Consequently, "[d]amages are measured by comparing the condition plaintiff would have been in, had the defendants not been negligent, with plaintiff's impaired condition as a result of the negligence." *Gleitman v. Cosgrove,* 49 *N.J.* 22, 28, 227 *A.*2d 689 (1967). Thus, a

---

[5] Defendants also argued that Ocasio's history of drug use was relevant with respect to his life expectancy prior to the accident. However, defendants failed to submit any expert report or other evidence to support this contention, which was raised for the first time immediately before trial.

plaintiff in a personal injury action "may be cross-examined as to prior injuries to show that his present physical condition did not result solely from defendant's negligent act, but was caused, wholly or partially, by an earlier accident or pre-existing condition," *Paxton v. Misiuk,* 34 *N.J.* 453, 460, 170 *A.*2d 16 (1961), and a defendant may present evidence that a plaintiff's capabilities were impaired before the accident. *Cf. Ostrowski v. Azzara,* 111 *N.J.* 429, 439, 545 *A.*2d 148 (1988) ("a defendant whose acts aggravate a plaintiff's preexisting condition is liable only for the amount of harm actually caused by the negligence.").

Applying these principles, we held in a wrongful death action that "evidence that the decedent had been committed to the Jamesburg Home for Boys was proper for the jury's consideration as to the future likelihood that he would have earned money and made contributions to his next of kin had he lived." *Wimberly v. City of Paterson,* 75 *N.J.Super.* 584, 611, 183 *A.*2d 691 (App.Div.), *certif. denied,* 38 *N.J.* 340, 184 *A.*2d 652 (1962). In another wrongful death action, the Law Division ruled that evidence of the decedent's prior suicide attempts was relevant to the jury's determination of the decedent's ability to make financial contributions to her dependents. *Gerstenberg v. Reynolds,* 259 *N.J.Super.* 431, 435–37, 614 *A.*2d 163 (Law Div.1991); *see also Pearce v. Fletcher,* 74 *N.C.App.* 543, 328 *S.E.*2d 889, 890 (1985) (evidence of history of drug and alcohol abuse relevant to determination of decedent's monetary value to dependents). Similarly, if a plaintiff seeks recovery for lost future earnings, the defendant may present evidence of his preexisting mental or emotional problems to show that his earning capacity was diminished before the accident. *See Ransom v. Adams Dairy Co.,* 684 *S.W.*2d 915, 917–18 (Mo.Ct.App. 1985).

The same principles apply if a plaintiff seeks damages for nonpecuniary injuries, such as pain and suffering, disability or loss of enjoyment of life. A defendant is entitled to show that the plaintiff's present pain and suffering is caused in part by a preexisting condition which became manifest before the accident.

*See Ostrowski v. Azzara, supra,* 111 *N.J.* at 439, 545 *A.*2d 148. A defendant also may present evidence that the plaintiff's preexisting disabilities prevented him from engaging in recreational or social activities or otherwise affected his quality of life. *See Knight v. Lord,* 271 *Ill.App.*3d 581, 207 *Ill.Dec.* 917, 923–24, 648 *N.E.*2d 617, 623–24 (1995) (testimony concerning plaintiff's severe preexisting back condition admitted with respect to plaintiff's claim that he was unable to play ball or engage in other recreational activities with his son); *Conrad v. Park,* 204 *A.D.*2d 1011, 612 *N.Y.S.*2d 524, 525 (N.Y.App.Div.1994) (plaintiff's pre-incident shoulder injury relevant to damages claim for loss of enjoyment of life).

Ocasio's damages claim for loss of enjoyment of life rests upon our decision in *Eyoma v. Falco,* 247 *N.J.Super.* 435, 445–53, 589 *A.*2d 653 (App.Div.1991), which held that consciousness of the loss of the enjoyment of life is not a precondition to the right of recovery for such a loss.[6] We indicated that "this element of damages must provide just and adequate compensation for the interruption of mental and physical functions," *id.* at 452, 589 *A.*2d 653, and that the measure of such damages is "how the injury has deprived the plaintiff of his customary activities as a whole person." *Ibid.* (quoting *Flannery v. United States,* 171 *W.Va.* 27, 297 *S.E.*2d 433, 436 (1982)).

To establish their damages claim under this standard, plaintiffs presented evidence of Ocasio's personal and social activities, such as taking his daughter to the park and raising pigeons, as well as his sister's testimony that he was an "energetic" and "very happy" person. However, the court refused to allow defendants to pres-

---

[6] New Jersey is one of only a small number of states which allow such damages. *See, e.g., Holston v. Sisters of the Third Order of St. Francis,* 247 *Ill.App.*3d 985, 187 *Ill.Dec.* 743, 618 *N.E.*2d 334 (1993), *aff'd* 165 *Ill.*2d 150, 209 *Ill.Dec.* 12, 650 *N.E.*2d 985 (1995); *Gregory v. Carey,* 246 *Kan.* 504, 791 *P.*2d 1329 (1990); *Flannery v. United States, supra.* A number of other states have refused to recognize the right to such damages. *See, e.g., Poyzer v. McGraw,* 360 *N.W.*2d 748 (Iowa 1985); *McDougald v. Garber,* 73 *N.Y.*2d 246, 538 *N.Y.S.*2d 937, 536 *N.E.*2d 372 (1989).

ent evidence of a significant negative aspect of Ocasio's life—a long-term addiction to drugs which he was still struggling to overcome at the time of the accident. If the court had admitted this evidence, the jury could have reasonably inferred that Ocasio was probably experiencing physical pain and personal dissatisfaction with his life at the time of the accident. Consequently, this evidence would have been directly relevant both to the jury's evaluation of the credibility of plaintiffs' witnesses and to its ultimate determination of the quality of Ocasio's life before the accident.

■ Nevertheless, the trial court granted plaintiffs' motion to exclude evidence of Ocasio's drug addiction on the ground that its probative value would be outweighed by its prejudicial effect. *N.J.R.E.* 403(a). The court failed, however, to indicate what this prejudicial effect would be. If the court conceived that the jury would be likely to award Ocasio less for loss of enjoyment of life if it heard evidence of his long-term drug addiction, this would not constitute "undue prejudice" within the meaning of *N.J.R.E.* 403(a) because, as previously discussed, such evidence was highly probative of this damages claim. *Cf. State v. Stevens*, 115 *N.J.* 289, 308, 558 *A.*2d 833 (1989) (quoting *State v. West*, 29 *N.J.* 327, 335, 149 *A.*2d 217 (1959)) ("That evidence is shrouded with unsavory implications is no reason for exclusion when it is a significant part of the proof"); *State v. Radziwil*, 235 *N.J.Super.* 557, 566–67, 563 *A.*2d 856 (App.Div.1989) ("[W]hile the evidence of defendant's habitual intoxication [whenever he went to a particular bar] undoubtedly cast him in a bad light in the eyes of the jury, this prejudice to defendant did not outweigh the probative value of the evidence [to show that defendant was intoxicated when he was involved in a hit and run accident]"), *aff'd o.b.*, 121 *N.J.* 527, 582 *A.*2d 1003 (1990). If the court's reason for excluding evidence of Ocasio's drug addiction was a concern that the jury might infer that he was under the influence of drugs on the night of the accident, even though there was no evidence to support this conclusion, it could have admitted the evidence and given the jury

an appropriate limiting instruction, *N.J.R.E.* 105; or if the court was convinced that such a limiting instruction would be ineffective, it could have exercised its authority under *Rule* 4:38–2(b) to bifurcate the trial on the issues of liability and damages. However, the complete exclusion of evidence of Ocasio's serious drug addiction, which was highly probative of his damages claim for loss of enjoyment of life, constituted an abuse of discretion.

In sum, we conclude that a jury assigned the responsibility of determining the value of the loss of enjoyment of life should have had the opportunity to consider evidence that Ocasio's mental and physical functions, customary activities and capacity to enjoy the pleasures of life were already restricted by a long-term addiction to drugs. Therefore, the trial court committed reversible error by allowing plaintiffs to paint a positive portrait of Ocasio's life while precluding defendants from presenting any evidence of its unpleasant and self-destructive aspects.

Accordingly, we affirm the judgment as to liability against Amtrak and the part of the judgment awarding damages for past and future medical expenses. We reverse the part of the judgment memorializing the jury's damages award for loss of enjoyment of life. We remand to the trial court for entry of an amended judgment in conformity with this opinion and a new trial limited to the determination of damages for loss of enjoyment of life.