FAY NELSON AND LEO NELSON, PLAINTIFFS-APPEL-
LANTS, v. THE GREAT ATLANTIC AND PACIFIC TEA
COMPANY, DEFENDANT-RESPONDENT, AND ERCOLE
TAMBURELLI, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1957—Decided January 9, 1958.

Jayne, J. A. D., dissented.

Before Judges CLAPP, JAYNE and SCHETTINO.

*Mr. Gerald E. Monaghan* argued the cause for plaintiffs-appellants (*Messrs. Leyden and Monaghan,* attorneys).

*Mr. Daniel Gilady* argued the cause for defendant-respondent (*Mr. James I. Toscano,* attorney).

The opinion of the court was delivered by

SCHETTINO, J. A. D.   Appeal is from a judgment of involuntary dismissal granted by the Law Division of this court on respondent's motion after plaintiffs' opening statements to the jury.   The appeal does not involve defendant Tamburelli, since plaintiffs conceded that the damages sought did not arise from any fault of this defendant and plaintiffs agreed to a dismissal of the suit against Tamburelli.

The action is for personal injuries suffered by plaintiff Fay Nelson, necessitating considerable medical treatment, including 11 days of hospitalization with traction, a cast and a special kind of corset.   Plaintiff Leo Nelson, husband, seeks compensation for his expenses and loss of consortium.

We recite the history of this case.   On Thursday evening November 18, 1954, at about 8:00 or 8:30 P. M., plaintiff, Fay Nelson, walked to the premises of the respondent to make certain purchases.   The outside premises of respond-

ent consist of a large parking area and a sidewalk around the building. Respondent had installed flood lights on the side of the building to light the area for safety of customers when it was open for business in the evening. Mrs. Nelson, while on the respondent's premises, tripped and fell in the parking area at or near the sidewalk. The area where Mrs. Nelson fell was dark, the lights were out, and had been out for approximately a week. Mrs. Nelson knew her foot struck something but she did not know exactly what the object was because of the darkness.

After plaintiffs' original opening to the jury, respondent made a motion stating that plaintiffs had failed to set forth a cause of action, in that plaintiff wife did not know upon what she had tripped or fallen and that the opening failed to set forth or allege any negligence on the part of respondent and, if anything, that there had been an assumption of risk under the law, since she continued to walk with the lights out, and that respondent had no notice that the lights were out. The court and plaintiffs' counsel engaged in discussion as to the location of the place where the fall had occurred and the duty which the defendant owed to anyone in the area. The court then permitted plaintiffs' counsel to reopen to the jury.

In the reopening plaintiffs' counsel made it clear that Mrs. Nelson fell on the premises leased by respondent near the sidewalk which surrounded the building and that the lights were out and had been out for almost a week. Respondent's counsel renewed his motion for involuntary dismissal on the theory that there was no law requiring respondent to keep the sidewalk and premises around the building lit. Plaintiffs urged the theory that where a person voluntarily undertakes to perform an act resulting in reliance by another person, followed by an arbitrary discontinuance of such act, there is an entrapment which constitutes negligence. Plaintiffs also stated that they would show that the lights in question were normally on illuminating the area for respondent's customers, that the lights had been out for about a week, that respondent had notice of this condition, and

that Mrs. Nelson had upon many occasions in the past shopped in the evening at respondent's store.

In granting the motion for an involuntary dismissal the trial court concluded:

"The opening does not indicate that the plaintiff was an invitee at the place where she fell. Neither the opening nor the subsequent argument indicates that she was an invitee at the position or place where she fell. The case is based on negligence, and since the opening does not indicate that she was an invitee, and the defendant is only liable for negligence to invitees and not to licensees, there is no liability on negligence. The opening does not set forth a cause of action. The opening indicates that the plaintiff tripped and fell on some object. There is no indication from the opening as to what the object is that caused her to fall or caused her to trip. There is no indication as to how long the object had been there."

█ Respondent concedes that a summary disposition of plaintiffs' case on the opening is an extraordinary measure and that such disposition should not be made unless the facts are undisputed and the law involved is clear. *Ross v. Orr,* 3 *N. J.* 277, 284 (1949); *Reti v. Vaniska, Inc.,* 8 *N. J. Super.* 275, 278 *(App. Div.* 1950).

"Much caution should be exercised by a court before disposing of a case finally at that juncture when the jury is already drawn and the witnesses are in court or are about to be called." *Snyder v. I. Jay Realty Co.,* 46 *N. J. Super.* 323, 330 *(App. Div.* 1957).

█ Respondent additionally concedes that upon a defendant's motion for an involuntary dismissal, all of plaintiffs' opening statements must be taken as true and plaintiffs must be given the benefit of all logical and reasonable inferences to be drawn therefrom. *Weidenmueller v. Public Service Interstate Transportation Co.,* 129 *N. J. L.* 279, 281 *(Sup. Ct.* 1942).

█ Emphatically as important to bear in mind is the following factor which now obtains under *R. R.* 4:42–2:

"Under our former practice a nonsuit did not preclude the plaintiff from commencing another action, but under our new Rules (*Rule* 3:41–2), the granting of the motion to dismiss operates as an ad-

judication on the merits in favor of the defendant, unless the order of dismissal otherwise specifies. Summary disposition on counsel's opening should not be employed unless the facts are undisputed and the law involved is clear. *Ross v. Orr*, 3 *N. J.* 277 (1949)." *Reti v. Vaniska, Inc., supra* (8 *N. J. Super.* at *page* 278).

In *Sherman v. Josephson*, 44 *N. J. Super.* 419, 425–426 (*App. Div.* 1957) we note:

"There is very little in our practice to commend dismissal on the plaintiff's opening to the jury. It should never be granted unless the facts are undisputed and the law is free from doubt. *Liberatori v. Yellow Cab Co. of Philadelphia*, 35 *N. J. Super.* 470, 474 (*App. Div.* 1955); *Okker v. Chrome Furniture Mfg. Corp.*, 26 *N. J. Super.* 295, 298 (*App. Div.* 1953); *Sole v. Clifton Colonial Gardens, Inc.*, 14 *N. J. Super.* 575, 578 (*App. Div.* 1951). At this point in the proceedings, the trial court is justified in exercising a most liberal discretion in disposing of the matter. The case is rare indeed where the interests of justice will not be served by withholding action on or by denying the motion and receiving the plaintiff's proof."

From the two openings, bare as they might be, we feel that a cause of action sounding in negligence can logically be inferred. As to plaintiff-wife's status and the duty of respondent in her regard, it seems readily inferable that, if plaintiff-wife approached the store to make purchases as claimed in her counsel's opening, plaintiff-wife was a business invitee, *Gill v. Krassner*, 11 *N. J. Super.* 10 (*App. Div.* 1950); and respondent may be charged with maintaining the premises in a reasonably safe condition for her. In *Schumann v. Horn & Hardart Baking Co.*, 8 *N. J. Super.* 153, 157 (*App. Div.* 1950) this court said:

"One who invites persons to come upon his premises is under a duty to exercise ordinary care to render the premises reasonably safe for such purpose. *Griffin v. De Geeter*, 132 *N. J. L.* 381 (*E. & A.* 1945). The proprietor of a store is not an insurer, but he is liable (1) for defects of which he knows or (2) defects which have existed for so long a time that, by the exercise of reasonable care, he had both an opportunity to discover and to remedy. *Daddetto v. Barbiera*, 4 *N. J. Super.* 479 (*App. Div.* 1949); *Restatement, Torts, N. J. Annot.*, § 343 (1940)."

Furthermore, this duty of reasonable care, viewed in the light of the evolution of the supermarket to include as an

integral part of its facilities extensive areas adjacent to or even surrounding the market for parking, would seem logically to apply to conditions either within or outside the supermarket. In *Seng v. American Stores Co.,* 384 *Pa.* 338, 121 *A. 2d* 123, 124 (*Sup. Ct.* 1956), the Pennsylvania court stated that the duty of care of a storekeeper includes the exterior premises as well as the store itself:

"It is unnecessary to dwell on the fact that getting groceries out of a store is just as important a part of the shopping operation as paying for them, and that a duty devolves upon the store owner to keep his building approaches as safe as the interior of his establishment."

Parking facilities are a major consideration nowadays and are an integral if not an absolutely essential component of the modern supermarket. Therefore, we fail entirely to see the realities of a rule of law which might command a lesser degree of care upon the grocer with regard to those areas outside the market over which he has control and into which he invites his patrons to either park their cars or necessarily to cross if they be on foot, in order to gain access to the market.

From a reading of the extended colloquy between the trial judge and counsel, the court may well have been confusing plaintiffs' denomination of "sidewalk" with the public sidewalk adjacent to the street, when in fact counsel for the plaintiffs was referring to the "sidewalk" and "curb" which were contiguous to and part of the market building itself, between it and the parking lot. From what was said further by the plaintiffs' counsel in this colloquy, it could well be inferred that, although plaintiff-wife was not certain what object specifically tripped her and caused her to fall, the sidewalk curb which was elevated above the parking lot may well have been the actionable cause under such unlighted and darkened conditions.

A jury may, upon the proofs produced at the trial, be able to conclude that in the exercise of reasonable care the defendant should have anticipated the presence of cus-

tomers in the parking lot, and should therefore have taken reasonable measures to see that the area was properly lighted. Plaintiffs were ready to prove that the light had been out for about a week. A jury might have found this certainly sufficient time to hold the respondent chargeable with notice thereof. It would not even matter that Mrs. Nelson was uncertain with respect to what she tripped on since, if the property were not adequately illuminated, defendant would be liable whether she tripped on debris or stumbled on the edge of the raised walk or curb or for that matter if she stumbled on any obstruction or depression no matter how slight so long as the improper illumination was to blame.

"Negligence may consist in the failure so to light the premises as to protect from injury by reason of dangerous conditions which would not reasonably be discovered in the absence of such light, as for example, in the case of the * * * difference in floor levels." 65 *C. J. S. Negligence* § 86, *pp.* 595–596.

Even assuming that respondent was under no duty to light its parking lot, it might well be inferred from plaintiffs' openings that respondent had in effect volunteered to do just that and its failure to carry out its voluntary assumption of duty is actionable. A jury might have been able to conclude, on the proofs which might be forthcoming, that in permitting the lights to go out after patrons became accustomed to approaching the store through the parking lot, the defendant failed to exercise reasonable care. 38 *Am. Jur., Negligence,* § 17, *pp.* 659–660.

From the two opening statements to the jury and the offer of proof made on plaintiffs' behalf in the ensuing colloquy with the court, it could well have found that plaintiff-wife was an invitee of respondent, that she had been a customer of the respondent on many prior occasions, that she had on other shopping trips seen the approach area lighted, that she and others had used this part of the parking area as an approach to the respondent's store, that respondent knew or should have known that this area was so used, that plaintiffs' witnesses would have testified that

the specific lights were out on the night of the accident and had been out for a week or more, that respondent had the duty or had assumed the duty of keeping the lights on, that the area had been littered with debris on numerous prior days and nights and probably was so littered on this night, that respondent knew or should have known about the debris and failed to do anything about clearing up the premises, and finally that such failure to remedy the debris condition plus the failure to light the area were the proximate causes of plaintiffs' damages. We conclude the trial court erred in granting the motion for involuntary dismissal.

Reversed and remanded for a new trial, costs on appeal to abide the result of the trial.

JAYNE, J. A. D. (dissenting). I share with my associates an aversion to the summary dismissal of an action grounded solely upon the poverty of an attorney's introductory remarks to the jury, but counsel for the appellants candidly acknowledged at the argument of the present appeal that the opening address at the inception of the trial of the instant case embodied completely the disclosure of all of the factual evidence which the plaintiffs could have adduced.

Envisioning evidence of such obscurity and speculation as here, I would vote to affirm a judgment of involuntary dismissal.

It is axiomatic that negligence is not to be presumed from the mere fact of the occurrence of an accident or injury. Without some comprehension of the characteristics of the mishap, its proximate cause can only be determined by entering the field of surmise and conjecture, the boundaries of which, as illustrated by the majority opinion, are coextensive with the fertility of the judge's imagination.

Did Mrs. Nelson slip or trip? Was the object an abandoned lettuce leaf or a forsaken banana peel, or was it more substantial, such as a head of lettuce or a stalk of bananas? Nobody knows. I think that we ought not conjecture that whatever it was and wherever it was on the premises, a jury could logically and legitimately deduce from such

nebulous information that the defendant was culpably responsible for her collision with it. That the unknown object would have been observed had the premises been illuminated is in my estimation nothing more than a gracious guess.

The majority opinion obliges me somewhat reluctantly to confess that the pace of the modern decisions in our jurisdiction toward the conversion of occupiers of land into insurers of the safety of entrants, whether adults or infants, whether invitees, licensees, or trespassers, is too nimble for my primitive agility.

A new trial will evidently produce only a duplication of the question. I would affirm the dismissal of the action.