105 N.J. Super. 66 (1969)
251 A.2d 144
BARBARA ANN TOMNEY AND CHARLES J. TOMNEY, PLAINTIFFS-APPELLANTS,
v.
FRANCES EBELING, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1969.
Decided March 10, 1969.
*67 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. James J. Rea, Jr. argued the cause for appellants (Messrs. McLaughlin and Butler, attorneys).
Mr. Floyd F. Lombardi argued the cause for respondent (Messrs. De Sevo & Cerutti, attorneys; Mr. Patrick F.X. Fitzpatrick, on the brief).
PER CURIAM.
Plaintiffs appeal from a judgment of involuntary dismissal entered on defendant's motion at the close of plaintiffs' case.
Plaintiffs contend that the evidence offered by them and the favorable inferences legitimately to be drawn therefrom, whose truth must be assumed for the purpose of the motion, *68 Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955), would justify a jury finding that defendant was negligent and that therefore the trial court erred in granting the motion. They say further that even if the evidence which they had offered prior to resting their case be deemed insufficient, the testimony which they proposed to adduce when they thereafter moved to reopen their case would have eliminated the deficiency and that the court abused its discretion in denying the motion to reopen.
Plaintiffs Barbara A. Tomney and Charles J. Tomney, husband and wife, are tenants of the defendant. With their four children they occupy the first-floor apartment of the two-family house at 191 Belvedere Avenue, Jersey City, owned by defendant. Defendant is Barbara's grandmother. She lives in the second-floor apartment with her daughter Mrs. Harris, who is Barbara's mother.
A door leads from the front porch of the house into a vestibule, some two feet deep, with a door in its rear wall opening onto a hallway. Entrance to the first-floor apartment is through a door at the left side of the hallway; entry to the second floor is by way of a stairway which starts at the rear of the hallway beyond the entrance door of the first-floor apartment.
The hallway floor is covered with linoleum. At the foot of the stairs, with its back edge flush against the riser of the first step, was a small wool throw rug, "a little over 2 feet wide" and "18 to 20 inches deep." The throw rug was a piece of carpet runner which had covered the stairs for some 13 years and had been cut off when the runner was altered some two years before. The throw rug rested directly on the linoleum.
According to Barbara, there had been no difficulty of any kind with the throw rug during the two years that it had been on the hallway floor prior to the date of the accident. As far as she knew, no one had ever slipped on it. There was another throw rug in the vestibule over which anyone *69 entering the house would have to walk, but one entering plaintiffs' apartment would not pass over the throw rug in the hallway; that throw rug was "there solely for the upstairs apartment."
Barbara had washed the hallway several days before, a task she usually performed at least once a week. She had shaken out and then replaced the rug. All she noticed about it was, as she "knew," that "it was old," and "was worn on top."
Sunday, April 26, 1964, was the grandmother's 80th birthday and was to be celebrated at a dinner party in her apartment to which the family and friends were invited. At the time of the accident, of which she was the only witness, Barbara was carrying a covered pot of boiling turnips from the first-floor apartment to the second floor. She was wearing a pair of loafers. She stopped at the foot of the stairs, her feet flat on the throw rug. She testified:
"Q Now, when you got to the area of this throw rug, did anything happen?
A Well, I had stopped to adjust, to make sure the cover was tightly on the pot; and as I did this, when I was sure that it was secure, I raised my right foot, and I felt something slide, and I fell. That is  the next thing I remember, the pot was on my head, and that's all. I remember calling my husband.
Q All right; what was it that slid?
A The rug slid down.
Q I'm sorry; pardon me?
A The rug slid, and I fell down."
She has "no idea" how far the rug slid.
The foregoing was the only evidence that had been offered on the issue of liability when plaintiffs rested their case. Defendant then moved for judgment of involuntary dismissal on three grounds: (1) plaintiff Barbara was a social guest and there had been no showing of violation of the duty owed social guests, cf. Berger v. Shapiro, 30 N.J. 89, 98-99 (1959); (2) even if plaintiff be considered an invitee rather than a social guest, there had been no *70 showing that defendant had been negligent; and (3) Barbara was guilty of contributory negligence as a matter of law.
The trial judge dealt with the motion on the hypothesis that plaintiff was an invitee. He apparently deemed controlling the stipulation in the pretrial order "that the subject stairway was a common stairway in the premises," even though the proofs disclosed that the common area of the hallway reserved for the use of the occupants of both apartments did not extend to the area where the throw rug lay, an area used only for access to the second floor. For the purpose of disposition of this appeal, we too shall consider plaintiff an invitee.
The argument on the motion for dismissal took place on a Friday afternoon. The argument was continued until the following Monday morning for the sole purpose of giving plaintiffs' attorney an opportunity to submit legal authorities in support of his claim that he had established a prima facie case.
But plaintiffs' attorney did not submit the promised memorandum of law when the trial resumed on Monday. Instead he sought leave to reopen his case to offer the testimony of Mrs. Harris, plaintiff's mother and defendant's daughter. He stated that she was prepared to testify that on a prior occasion the rug had moved and defendant, who was present, had "shifted it into place."
The motion to reopen was denied and defendant's motion for an involuntary dismissal was granted, the court commenting that even if the proffered testimony of Mrs. Harris were to be received, it would not change the result.
We find it unnecessary to consider whether the trial judge abused his discretion in denying the motion to reopen plaintiffs' case. Cf. Handleman v. Cox, 74 N.J. Super. 316, 333 (App. Div. 1962), affirmed on other grounds 39 N.J. 95 (1963). In our view, the proffered testimony was not sufficient to overcome the basic deficiency in plaintiffs' case; their failure to show that, under the circumstances of this *71 case, it was negligent to permit the throw rug to be where it was. Cf. Overby v. Union Laundry Co., 28 N.J. Super. 100, 103-104 (App. Div. 1953), affirmed o.b. 14 N.J. 526 (1954); Restatement, Torts 2d, § 343, comment (e).
Use of throw rugs in homes is common and not inherently dangerous, even though, as is generally known, under some circumstances they may occasionally slip or move. Plaintiffs offered no expert testimony and cited no authority in support of their contention that the mere use of a throw rug in a home hallway without some non-skid material between it and the floor on which it rests constitutes negligence. The cases which have dealt with the issue are to the contrary even where the rug rested on a polished or waxed floor. See, e.g., Brown v. Davenport Holding Co., 134 Neb. 455, 279 N.W. 161, 118 A.L.R. 423, 424 (Sup. Ct. 1938); Ashley v. Jones, 126 Cal. App.2d 328, 271 P.2d 918, 921 (Cal. D. Ct. App. 1954).
There was nothing unusual about the rug in this case or the linoleum floor on which it rested. There was no indication that there was anything wrong with the undersurface of the rug or that the linoleum floor  whose care was left to plaintiff Barbara  was slippery, let alone unusually slippery. Testimony that on a prior occasion, in the presence of plaintiff's mother and grandmother, the throw rug had moved  as throw rugs may sometimes do  would not cure that deficiency. Such testimony would indicate, if anything, that the mother and grandmother thought that the continued presence of the rug where it had been for two years presented no risk of harm to any of the members of the family.
The judgment is affirmed.