791 A.2d 1081 (2002)
348 N.J. Super. 264
Mary Jane CAMPBELL, Plaintiff-Appellant,
v.
Victor HASTINGS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 6, 2002.
Decided March 4, 2002.
Jeffrey A. Libert, Woodbury, attorney for appellant.
David B. Wright, Moorestown, attorney for respondent (Barbara A. Johnson, of counsel and on the brief).
Before Judges CONLEY, LEFELT and LISA.[1]
The opinion of the court was delivered by LEFELT, J.A.D.
Plaintiff Mary Jane Campbell, a 75-year old woman, visited a friend who was living in defendant Victor Hastings' house. Campbell fell while in Hastings' home and sued for her injuries. The motion judge granted defendant summary judgment, concluding that a poorly illuminated, sunken foyer into which Campbell fell was not a dangerous condition, and therefore Hastings had no obligation to warn his visitor. Campbell appeals, and we reverse and remand.

I.
The pertinent facts and procedural history can be briefly stated. Campbell arrived at Hastings' home shortly before dark, entered through the front door into a sunken foyer and proceeded to the back of the foyer and up two steps into the family room. After viewing some photographs and visiting for about an hour with her friend, Hastings escorted Campbell through the kitchen and into the living *1082 room to look at paintings and other collectibles. Defendant then took plaintiff through a different pathway, into the same sunken foyer. It was dark outside and the light in the foyer had not been turned on. Hastings did not mention that there were two steps leading down to the foyer, and as Campbell stepped forward, she fell into the sunken foyer.
The common law regarding premises liability was applied by the motion judge. This law requires various degrees of care depending upon the visitor's status while on the owner's or occupier's land. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433-34, 625 A.2d 1110 (1993). Under this law, the owner/occupier owes increasing care depending upon whether the visitor is a trespasser, licensee or social guest, invitee or business invitee. Ibid.
The motion judge considered Campbell to be Hastings' social guest. The parties have not supplied those portions of the record that may describe Campbell's or Campbell's friend's relation to Hastings. While not positive on this record, Campbell probably was not a business invitee, requiring the highest standard of care, id. at 433, 625 A.2d 1110, or a trespasser, requiring a lesser standard of care under the common law. Ibid. She appears to be most likely a licensee or social guest, as determined by the motion judge.
According Campbell the status of licensee or social guest under the common law, Hastings should have warned Campbell of any dangerous conditions known to him and unknown to Campbell. Id. at 433, 625 A.2d 1110; Hanna v. Stone, 329 N.J.Super. 385, 389, 748 A.2d 115 (App.Div.2000). Because of this duty, the motion judge searched for a dangerous condition, and according to the judge, found none. The judge said "it's part of somebody's household and their household because they don't have a light on doesn't make part of their household a dangerous area or this foyer a dangerous condition." Not believing the sunken foyer to be a dangerous condition, the judge concluded that no duty to warn ever arose, under the common law, and dismissed Campbell's complaint on Hastings's summary judgment motion.

II.
There are recent Florida cases directly supporting the motion judge's decision. In Rice v. Whitehurst, 778 So.2d 1027 (Fla. App. 4 Dist.2001), for example, plaintiff fell into a sunken living room. On appeal, the judge held that absent evidence that the home's sunken living room was of uncommon design or unusual construction, or created significant optical illusion, defendant homeowner was not liable for injuries sustained by plaintiff-guest. Id. at 1028. In Allen v. Young, 807 So.2d 704, (Fla. App. 4 Dist.2002), the court concluded that a homeowner had "no duty to warn a guest of a change in floor levels because multiple floor levels is not itself a dangerous condition."
Under these Florida cases and most New Jersey cases, if a particular condition of property is without defective design or operation it is generally considered not dangerous. E.g., Vega v. Piedilato, 154 N.J. 496, 505, 713 A.2d 442 (1998)(open air shaft); Oliver Brown Trucking Co. v. Flexon Industries Corp., 230 N.J.Super. 117, 121, 552 A.2d 1026 (Law Div.1988) (stored combustible material) Nosca v. Queen City Sav. & Loan Assoc., Inc., 122 N.J.Super. 336, 338, 300 A.2d 354 (App. Div.1973) (set of doors); Tomney v. Ebeling, 105 N.J.Super. 66, 71, 251 A.2d 144 (App.Div.1969) (throw rugs).
The common law on premises liability in New Jersey, however, has undergone transition toward "a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to *1083 others." Hopkins, supra, 132 N.J. at 435-36, 625 A.2d 1110 (quoting Butler v. Acme Markets, Inc., 89 N.J. 270, 277, 445 A.2d 1141 (1982)). As early as 1982, our Supreme Court noted that the "historical classifications of the degree of care owing to visitors upon the land are undergoing gradual change in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others." Butler, supra, 89 N.J. at 277, 445 A.2d 1141.
The Court, in a more recent case involving injury to five young adults tobogganing at night on a closed ski slope, found no need to "struggle to place plaintiffs within one or another of the common law classifications." Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 509, 677 A.2d 705 (1996). Rather, the Court concluded that its task was to consider the actual relationships between the parties and all of the surrounding circumstances to determine whether it was fair and just to impose upon the landowner a duty of reasonable care commensurate with the risk of harm. Ibid.
After Hopkins and Brett, Judge Skillman, writing for another panel of this court, clarified that the common law premises liability rules may continue "to provide guidance in determining whether a duty of reasonable care should be imposed in particular circumstances." Ocasio v. Amtrak, 299 N.J.Super. 139, 149, 690 A.2d 682 (App.Div.1997). The common law principles may, therefore, still be used to assess whether to impose a "landowner's general tort obligation to avoid foreseeable harm to others." Brett, supra, 144 N.J. at 508, 677 A.2d 705. In addition, the common law classifications must be flexibly utilized to assess landowners' liability for negligently inflicting harm to trespassing children. Vega, supra, 154 N.J. at 510, 713 A.2d 442.
In assessing whether to impose a duty of reasonable care to avoid foreseeable harm when not dealing with trespassing children, however, we must consider the standard four factors normally assessed to determine whether imposition of a duty would be fair and just. Ocasio, supra, 299 N.J.Super. at 149-50, 690 A.2d 682. The four factors, that must be weighed and balanced, include (1)the relationship of the parties, (2)the nature of the attendant risk, (3)the opportunity and ability to exercise care, and (4)the public interest in the proposed solution. Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; Ocasio, supra, 299 N.J.Super. at 149-50, 690 A.2d 682. In this case, the question thus becomes whether under all of the circumstances it is fair and just to impose a duty on Hastings to exercise reasonable care to prevent foreseeable harm to Campbell, and, if so, whether sufficient foreseeable harm was present to raise a jury question regarding Hastings' breach of this obligation.

III.
We proceed to analyze the four factors and address the foreseeable harm question. Here, Campbell had never before been in Hastings' house. While we are uncertain as to the exact relationship Campbell had to Hastings, she was clearly on the premises with his knowledge and willing participation. She knew of the sunken foyer, but she did not know it was in front of her when she fell. While there is some dispute over what Campbell actually knew regarding the foyer's location and exactly how dark the premises were, the defendant in this case was granted summary judgment. Accordingly, we *1084 must view favorably the evidence supporting plaintiff's position. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
We acknowledge that there is no indication in this record that the sunken foyer itself contained any claimed defect. In Hopkins, for example, plaintiff fell in a house because she was unaware that a step down was necessary. The floors on both levels were covered with the same pattern vinyl, and according to plaintiff the levels were "camouflaged." Hopkins, supra, 132 N.J. at 432, 625 A.2d 1110. The absence of any defect in the sunken foyer's construction in this case was one of the reasons the motion judge believed there was no dangerous condition.
Campbell supplied no expert to explain why the sunken foyer was dangerous, and whether a "particular condition is dangerous will vary with the myriad situations that pose hazards to persons on property." Id. at 450, 625 A.2d 1110. However, expert testimony is not necessary when the subject can be understood by jurors utilizing common judgment and experience. Wyatt v. Wyatt, 217 N.J.Super. 580, 591, 526 A.2d 719 (App.Div.1987). This is such a case.
In Nelson v. Great Atlantic & Pacific Tea Co., 48 N.J.Super. 300, 137 A.2d 599 (App.Div.1958), Justice, then Judge Schettino, writing for the majority, with Judge Jayne dissenting, considered an appeal from plaintiff who tripped and fell in defendant's parking lot as she walked toward the store intending to make some purchases. Id. at 302, 137 A.2d 599. Plaintiff knew her foot stumbled on something but she did not know what because of darkness. Id. at 303, 137 A.2d 599. The area was dark because defendant had failed to replace a broken light. Ibid.
In concluding that a jury question was present, the court noted that it did not matter that plaintiff was "uncertain with respect to what she tripped on since, if the property were not adequately illuminated, defendant would be liable whether she tripped on debris or stumbled on the edge of the raised walk or curb or for that matter if she stumbled on any obstruction or depression no matter how slight so long as the improper illumination was to blame." Id. at 307, 137 A.2d 599.
The Nelson court quoted from 65 C.J.S. Negligence § 86, pp. 595-596 for the proposition that negligence can occur from a failure to light the premises "to protect from injury by reason of dangerous conditions which would not reasonably be discovered in the absence of such light, as for example, in the case of the ... difference in floor levels." Id. at 307, 137 A.2d 599. That is what occurred here.
Obviously, dangerousness is closely related to foreseeable harm. If there is no danger, then there will be no reasonably foreseeable harm. Campbell could not clearly see into the foyer because it was dark, and a safely designed and constructed walkway, parking lot, or room in a house can become dangerous if poorly illuminated. In fact, Hastings recognized after Campbell fell that he should have put the light on. Under these circumstances, the sunken, darkened foyer could be likened to a partially concealed, open pit.
The possibility of a seventy-five year old woman falling or stumbling into the unlit foyer should have been reasonably foreseeable under these circumstances. Moreover, Hastings could have exercised reasonable care with minimum effort. Hastings could have, for example, more closely escorted or guided Campbell out of the house or warned her either verbally or by simply putting on the light.
*1085 The imposition of homeowner liability for home-based social activities should be undertaken with great caution. Besides financial concerns, courts should be wary of imposing other unreasonable burdens on homeowners. Given the modest effort that would satisfy reasonable care to guard against dangers caused by darkness, however, we do not conclude that imposition of such a duty would be unjust or unfair. Such a modest obligation for homeowners would protect against accidents and discourage negligent conduct by encouraging the minimization of risks to visitors. Therefore, we conclude that a duty of reasonable care to safeguard against foreseeable harm is present in this case.

IV.
Summary judgment should not have been granted Hastings based on the non-existence of any dangerous condition. A sufficient prima facie case of foreseeable harm was presented by Campbell to withstand summary judgment.
It was for a jury to assess whether Hastings's conduct, including his failure to protect Campbell in any fashion, breached the standard of reasonable care and constituted negligence.
Reversed and remanded for further proceedings.
NOTES
[1] Judge Lisa, not originally assigned to hear this case, has joined in its consideration and in this opinion.